**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**VINTAGE VERANDAH, INC.**                                                    **PLAINTIFF**


**VS.**                                    **4:04CV00066-WRW**


**MASTERCRAFT INTERNATIONAL, INC. and
WAL-MART STORES, INC.**                                                    **DEFENDANTS**

**MASTERCRAFT INTERNATIONAL, INC.**                            **CROSS-CLAIMANT**

**VS.**

**VINTAGE VERANDAH, INC.**                                    **CROSS-DEFENDANT**


<u>**ORDER**</u>

        This is a copyright and trade mark infringement case brought by Vintage Verandah, Inc.

("Vintage") against Mastercraft U.S.A., International Inc., ("Mastercraft") and Wal-Mart Stores,

Inc. ("Wal-Mart").  Mastercraft  brought a cross-claim against Vintage, alleging copyright

infringement of designs authored by Jan Graf ("Graf") and assigned by her to Mastercraft.   A

bench trial began on October 30, 2006.  Testimony and other evidence was presented, and the

trial concluded on October 31, 2006.  At the conclusion, Wal-Mart was dismissed from the case,

for reasons more fully explained below, and Vintage and Mastercraft were given the opportunity

to submit briefs on remaining issues.  Vintage and Mastercraft filed their post-trial briefs in the

time allotted.[1]

_____

        [1]Doc. Nos. 73 and 74.

1

## I. Background

### A. Complaint by Vintage

Vintage claims at least half ownership in a lamp design known as the "Bubba Monkey." Vintage alleges that its employee, Ed Pike, who is now dead, helped design and make the mold for the original lamp.  On the other hand, Mastercraft claims ownership in the lamp through Cricket Briggs ("Briggs"), a former sales representative for Vintage.  Briggs testified that she designed the lamp on her own and named it after her son, Bubba.  According to Briggs, Ed Pike made the mold from her original design and changed her design for the purpose of making it easier to produce.

During her tenure with Vintage, Briggs hired her own assistants, and paid for her supplies, such as business cards and office phones.  Briggs worked exclusively for Vintage and sold its products.  She determined her own schedule, paid her travel expenses, and set up sales shows.  She was paid by commission.  Vintage reimbursed her for expenses connected to production of the product.  She was not listed as an employee, social security was not withheld from her commission checks, she was not covered by Vintage's workers compensation policy, and she did not receive any other benefits from the company.

 After leaving Vintage, Briggs assigned her "Bubba Monkey" design rights to Mastercraft.  Mastercraft manufactured the lamps, and Wal-Mart sold them.  Vintage alleges that Mastercraft and Wal-Mart are liable for copyright infringement.  In addition, Vintage asserts that the "Bubba Monkey" lamp is "trade dress," as that term is defined under the Lanham Trade Mark Act,[2] and that Mastercraft is liable for trade mark infringement.

---

[2]15 U.S.C. § 1125(2)(A).

### B.  Cross-Claim by Mastercraft

Jan Graf is a lamp designer who entered into an agreement where she would design lamp bases, and Vintage would manufacture and sell them.  In exchange, Graf would be paid a 3% royalty.  By April 2002, Graf became dissatisfied with Vintage and entered into an agreement assigning her design rights of twelve lamp bases to Mastercraft.[3]  Mastercraft registered these designs, and the copyright registrations became effective in 2003.[4]  Despite the assignment, Vintage continued to sell lamps designed by Graf.  In May 2003, Graf sued Vintage for Breach of Contract, Trade Mark Infringement, and Unfair Competition.[5]

Graf and Vintage settled the case in September 2004.  The terms of the agreement did not include promises by Vintage concerning future sales of Graf designs -- it settled the claims set out in the complaint -- nothing more.  Mastercraft was not a party to the suit and, therefore, not part of  the settlement.  Mastercraft maintains that after the settlement, Vintage continued to manufacture and sell the copyrighted Graf designs.  Mastercraft asserts that Vintage owes it over $144,000.00  in damages related to the sale of copyrighted Graf designs.  Vintage counters that it owes only $4,700.00 to Mastercraft in royalties.

---

[3]Mastercraft Ex. 23.

[4]Mastercraft Collective Ex. 17.

[5]*Jan Graf v. Elite Lamp and Shade, Vintage Verandah, Inc., and Illumatique*, Eastern District, Arkansas, Jonesboro Division, 3:03CV00156 (May 27, 2003).

## II. Authority

### A. Copyright Infringement

In order to establish a claim for copyright infringement, a plaintiff must establish that it owns a valid copyrighted work.[6]  To meet this burden, the plaintiff must show that the work is original, and that the applicable statutory formalities were followed.[7]  A certificate of registration is *prima facie* evidence of ownership and validity of the copyright -- but such evidence can be rebutted.[8]  The *prima facie* case is rebutted when a defendant shows that the copyrighted work is not worthy of protection because it lacks originality.[9]

Copyright ownership "vests initially in the author or authors of the work," unless the work is "made for hire."[10]  The author is the individual who creates the work by translating an idea into a fixed, tangible expression.[11]  A work is "made for hire" if it is "prepared by an employee within the scope of his or her employment."[12]  In that event, "the employer or other person for whom the work was prepared is considered the author for purposes of this title and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns

---

[6]*Feist Publ'ns, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

[7]*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

[8]*Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).

[9]*Bateman*, 79 F.3d at 1541.

[10]17 U.S.C. § 201(a)-(b).

[11]*Community for Creative Non-Violence, et al. v. Reid*, 490 U.S. 730, 737 (1989).

[12]17 U.S.C. § 101.

all of the rights comprised in the copyright."[13]  Terms such as "employee," "employer," and

"scope of employment" as used in the Copyright Act are interpreted in light of the general

agency common law, rather than on the law of any particular state.[14]  The Supreme Court set out

the factors that should be considered when determining if an individual is an employee or an

independent contractor:

> [T]he hiring party's right to control the manner and means by which the product is
> accomplished; the skill required; the source of the instrumentalities and tools; the
> location of the work; the duration of the relationship between the parties; whether the
> hiring party has the right to assign additional projects to the hired party; the extent
> of the hired party's discretion over when and how long to work; the method of
> payment; the hired party's role in hiring and paying assistants; whether the work is
> part of the regular business of the hiring party; whether the hiring party is in
> business; the provision of employee benefits; and, the tax treatment of the hired
> party.[15]

No single factor is determinative.[16]

### B.  Joint Authorship

Under the Copyright Act, a "joint work" is "prepared by two or more authors with the

intention that their contributions be merged into inseparable or interdependent parts of a unitary

whole."[17]  In order to find joint authorship, there must be evidence that the alleged co-authors

*intended* to be co-authors.[18]  Simply assisting in the creation of an original work is not sufficient

---

[13]17 U.S.C. § 201(b).

[14]*Reid*, 480 U.S. at 739.

[15]*Id.* at 751-52, *citing* Restatement (Second) Agency § 220 (1958).

[16]*Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 400 (1960); *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 321 (2nd Cir. 1982).

[17] 17 U.S.C. § 101.

[18]*Childress v. Taylor*, 945 F.2d 500, 509 (2d Cir. 1991) (emphasis added).

to create co-ownership.  For instance, help that a research assistant or secretary or draftsman provides in the preparation of a thesis does not entitle the helper to claim that he or she is a joint author -- "there has to be some original expression contributed by anyone who claims to be a co-author."[19]

### C.  Trade Dress

Section 43(a) of the Lanham Act,[20] creates a federal cause of action for trade dress infringement. All products have a trade dress which is defined as the  "total image of a product, the overall impression created, not the individual features."[21]  Not every trade dress is protected. The standard for a trade dress infringement requires a plaintiff to show:  (1) its trade dress is either inherently distinctive or has acquired secondary meaning; (2) the trade dress is nonfunctional; and (3) defendant's imitation of the trade dress "creates a likelihood of confusion in consumers' minds as to the origin of the services."[22]

A trade dress based on the design of a product can never be inherently distinctive. Product design is intended to make the product itself more useful or *more appealing* and not to identify who made the product.[23]  The Supreme Court made it clear that a product's distinctive

---

[19]*Gaiman v. McFarlane*, 360 F.3d 644, 658 (7th Cir. 2004).

[20]15 U.S.C. § 1125(a).

[21]*InstyBit, Inc. v. Poly-Tech Industries, Inc.*, 95 F.3d 663, 667 (8th Cir. 1996), *cert. denied*, 519 U.S. 1151(1997).

[22]*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780 (1995); *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986).

[23]*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) (emphasis added).

shape does not render the product "inherently distinctive" for trade dress purposes.  The Court held:

> In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably,  even the most unusual of product designs -- *such as a cocktail shaker shaped like a penguin -- is intended not to identify the source, but to render the product itself more useful or more appealing.*[24]

In view of this Supreme Court holding, a lamp base that is designed in the shape of a monkey is not inherently distinctive.  If this is the case, then the party claiming protection must show that it *acquired* distinctiveness through secondary meaning.[25]

Secondary meaning occurs when "in the minds of the public, the primary significance of a trade dress is to identify the source of the product rather than the product itself."[26]  Secondary meaning requires that the trade dress user show that, by long and exclusive use of a particular trade dress, its product design has become so familiar to the public, that the design serves to identify the source of the goods and to distinguish them from those of others.[27]  The ultimate question is whether, in the consumer's mind, the mark represents a single thing that comes from a single source.[28]

## D.  Cross-Claim

---

[24]*Id.* (emphasis added).

[25]*Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) (emphasis added).

[26]*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000).

[27]*Aromatique*, *Inc. v. Gold Seal, Inc.*, 28 F.3d 862, 870 (8th Cir. 1994).

[28]*Co-Rect Products, Inc. v. Marvy! Advertising*, 780 F.2d 1324, 1330 (8th Cir. 1985).

A copyright holder may grant a limited license for use of copyrighted material.[29] "A copyrighter who grants such a license in her work waives her right to sue the licensee for copyright infringement."[30] Once a license is granted by the copyright owner, she may sue for infringement only if, the scope of the license is exceeded.[31]  Nonexclusive licenses do not transfer ownership of the copyright.[32]  Uses of the copyrighted work, that remain within the scope of a nonexclusive license, are immunized from infringement suits.[33]

A copyright owner may grant a nonexclusive license expressly or impliedly through conduct.[34]  An implied license can be found where the copyright holder engages in conduct from which consent can be inferred.[35]  Nonexclusive implied licenses arise when (1) a person (licensee) requests the creation of a work, (2) the creator (licensor) makes the particular work and delivers it to the licensee, and (3) the licensor intends that the licensee-requestor copy and distribute his work.[36]

---

[29]*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006); *In re Microsoft Corporation Antitrust Litigation*, 333 F.3d 517, 534-35 (4th Cir. 2003).

[30]*Recursion Software, Inc. v. Interactive Intelligence*, 425 F. Supp.2d 756, 771 (N.D. Tex 2006) (*quoting Pavilica v. Behr*, 397 F. Supp.2d 519, 526 (S.D. N.Y. 2005)).

[31]*LCS Architects*, 434 F.3d at 1156.

[32]*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996).

[33]*Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).

[34]*Field v. Google,* Inc.  412 F. Supp. 2d 1106 (D. Nev. 2006) (*citing* Nimmer, Melville B. & David Nimmer, *Nimmer On Copyright* § 10.03(A) (3rd. 1989); *see also Quinn v. City of Detroit*, 23 F.Supp.2d 741, 749 (E.D. Mich. 1998).

[35]*De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) (explaining the requirements for an implied license defense to a charge of patent infringement).

[36]*Recursion Software, Inc*., 425 F. Supp.2d at 771 (N.D. Tex. 2006).

A license is an affirmative defense to a claim of copyright infringement.[37]  However, if the existence of the license is uncontested, then the license need not be pled as an affirmative defense.[38]  When the contested issue is the scope of a license, rather than its existence, the copyright owner bears the burden of proving that the defendant's copying was unauthorized.[39]

Mastercraft maintains that Graf declared the license "null and void" because Vintage, at some point, fell behind on royalty payments.  In short, Mastercraft alleged that the license was rescinded.  Although both sides stipulated that a license existed, the documents outlining the license are not in evidence.  Neither Vintage nor Mastercraft produced Graf's license agreement.  The Mutual General Release, placed in evidence by Mastercraft, does not address the license agreement between Graf and Vintage, and does not contain a rescission clause.

The absence of a rescission or reversion clause in a licensing agreement is a factor that weighs against rescission.[40]  Even when a breach is so material as to give rise to a right of rescission, rescission does not occur automatically without some affirmative steps taken by the rescinding party.[41]

---

[37]*Field v. Google,* Inc.  412 F. Supp. 2d 1106 (D. Nev. 2006) (*citing Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995); *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir. 2003).

[38]*Graham*, 144 F.3d at 236.

[39]*Id.*

[40]*Morris v. Castle Rock Entertainment*, 246 F. Supp. 2d 290, 294 (S.D. N.Y. 2003); *USAR Sys. v. Brain Works*, 897 F. Supp. 163, 167 (S.D. N.Y. 1995).

[41]*Graham*, 144 F.3d at 238.

Whether a copyright license is rescinded is a matter that is governed by state contract law.[42]  In Arkansas,  rescission is recognized at law and in equity.  With rescission in equity, the affirmative powers of the court of equity are used to rescind the contract.[43]  However, at law, the rescission is by act of the party and is a condition precedent to bringing an action to recover according to the contract terms.[44]  Rescission at law is accomplished when one party to a contract returns the benefits received under the contract.[45]  Therefore, Arkansas requires affirmative action from the rescinding party -- either by application to a Court of Equity, or by taking steps to negate the agreement.

## III.   Findings and Conclusions

1.    Plaintiff failed to show, by a preponderance of the evidence, that Ed Pike was the author or co-author of the Bubba Monkey Lamp.  At best, the evidence shows that Ed Pike assisted in molding the original design, but there is no evidence that Ed Pike made an original contribution to the design.  Further, there is no evidence that Briggs and Ed Pike intended to be "co-authors" of the Bubba Monkey Lamp.[46]

2.    The preponderance of the evidence shows that the sole author of the Bubba Monkey was Cricket Briggs.  The copyright obtained by Vintage is invalid because the designs are not original Vintage designs and are, therefore, not entitled to copyright protection.[47]

---

[42]*Walthal v. Rusk*, 172 F.3d  481 (7th Cir. 1999).

[43]*Coran v. Keller*, 295 Ark. 308 (1988).

[44]*Id.*

[45]*Savers Fed. Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n*, 298 Ark. 472 (1989).

[46]*Childress*, 945 F.2d at 509.

[47]*Bateman*, 79 F.3d at 1541.

3.      The preponderance of the evidence shows that, at the time she designed the Bubba

Monkey, Briggs was an independent contractor and not an employee of Vintage

Verandah.  This is based on the evidence that Vintage Verandah did not exercise control

over the means and manner of Briggs's daily work; Briggs possessed a level of skill that

is typically possessed by independent contractors; she was paid by commission, rather

than by the hour; she paid for her own business supplies, and; Vintage did not treat her as

an employee, i.e.,  it did not file W-2 tax forms, it did not withhold social security, and

did not pay any other employment benefits.  In short, the conduct of the parties did not

show an intention to create a master servant relationship.[48]

4.      Vintage failed to show that the Bubba Monkey Lamp was protected trade dress.  A lamp

base that is designed in the shape of a monkey is not "inherently distinctive."[49]  Further,

no evidence was submitted demonstrating that the Bubba Monkey Lamp design was used

exclusively by Vintage for such a long period of time, that it became identified with the

company.  Therefore, Plaintiff failed to meet the distinctiveness element that is essential

to show that a design is a "trade dress."[50]

5.      The parties stipulated that Graf created work for Vintage and delivered it to Vintage for

the purpose of copy and distribution.  Thus, it is uncontested that Vintage was granted a

---

[48]*Reid*, 480 U.S. at 751-52.

[49]*Wal-Mart*, 529 U.S. at 213.

[50]*Id.*

license to produce and sell Graf's designs.[51] The burden is on Mastercraft to show that Vintage exceeded the terms of the license agreement.[52]

6.    Mastercraft failed to produce any evidence that Jan Graf took affirmative steps to rescind the license she granted to Vintage.[53]  The Mutual General Release,[54] signed by Vintage and Graf in September 2004, did not mention rescission of the license and does not contain any language limiting Vintage's future use of the license.

7.    Mastercraft failed to show, by a preponderance of the evidence, that Vintage exceeded the license granted by Graf.  In view of this, Vintage is not liable for copyright infringement of the Graf designs assigned to Mastercraft.

8.    Vintage admits that it owes Mastercraft the royalty under the license agreement that totals $4,700.00.

9.    Wal-Mart is not liable for copyright infringement because it sold lamps produced by Mastercraft under a valid copyright and with the permission of the lamp's creator.

## IV.    Conclusion

Based on the above findings, the copyright and trade mark infringement claims of Vintage Verandah, Inc. against Mastercraft International, Inc. and Wal-Mart Stores, Inc., are DISMISSED; the cross-claim by Mastercraft International, Inc., for copyright infringement of Graf lamp designs, is DISMISSED; Vintage owes Mastercraft royalties under the license agreement which total $ 4,700.00.

---

[51]*Recursion Software, Inc.*, 425 F. Supp. 2d at 771.

[52]*Graham*, 144 F.3d at 236.

[53]*Shaver*, 74 F.3d at 768; *Graham*, 144 F.3d at 229.

[54]Mastercraft Ex. 24.

12

IT IS SO ORDERED this 15th day of December, 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE